## HUNTER v. E. S. CORNING & CO.

### (Circuit Court of Appeals, Seventh Circuit.   March 23, 1898.)

### No. 468.

INTERNAL REVENUE—TAXATION OF SPIRITS—SOAKAGE.

Under Rev. St. § 3248, declaring it to be the true intent and meaning of internal revenue laws that all "distilled spirits, spirits, alcohol, and alcoholic spirit," shall be subject to the tax, the soakage of a barrel of spirits is liable to taxation if, by any process, it is extracted from the wood, so as to become merchantable. It is no obstacle to the collection of the tax thereon that the usual allowance for soakage was originally made on the package, the tax then paid, and the proper stamps affixed, or that there are no specific regulations by the commissioner of internal revenue for the collection of the tax on soakage so extracted.

Jenkins, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The judgment under review was given for the recovery of taxes alleged to have been unlawfully collected by the plaintiff in error, James W. Hunter, as collector of the internal revenue for the Fifth collection district of Illinois, of the defendant in error, which is a corporation under the name of Corning & Co. The case is in effect an agreed one, and the question is whether, upon the facts stipulated, the judgment rendered is right. Besides a written waiver of trial by jury, the parties subscribed and filed the following agreement, which is entitled in the cause: "The following facts as to the manner, mode, and process by which the plaintiff extracted from the wood of the barrels a portion of the spirits as soakage therein, are mutually agreed to in connection with the statements set forth in the plaintiff's declaration. The distiller's original spirit packages having had effaced and obliterated all stamps, marks, and brands, after they were emptied by the plaintiff, were then by the plaintiff subjected to a process of steaming; and the steam was then condensed, viz. the steam was conveyed by a pipe or hose to the packages which had once contained the spirits, and the packages were then subjected to the process of steaming by which the spirits previously absorbed by said packages were driven out of the packages, and, with the steam, were carried through the bung holes to a condenser, and that the spirits thus obtained were the same spirits to recover the taxes levied and collected on which this suit was brought. It is also stipulated that the facts set forth in the special count are to be taken to be true for the purpose of this trial, and as evidence. It is further stipulated that the only cause of action held by the plaintiff against the defendant is the cause of action set forth in the special count of the declaration, and that, as to the remaining counts of the declaration, they may be and are hereby dismissed."

The averments of the declaration, in so far as they are now material, are that the defendant in error, prior to March 31, 1897, had been engaged at Peoria, Ill., in compounding and in selling at wholesale and retail, whereunto it was duly licensed, whiskies, gins, spirits, and other alcoholic and vinous liquors, and that prior to that date it had purchased at one time 25 and at another time 15 barrels of spirits of the American Spirits Manufacturing Company, which was engaged in the production of spirits, alcohol, and high wines at the Monarch Distillery at Peoria, Ill.; that on the barrels so purchased were the proper warehouse numbers and tax-paid stamp numbers, and that the proper tax thereon had been in fact paid by the manufacturer and received by the government; that, under and by virtue of the internal revenue laws of the United States and the rules and regulations of the commissioner of internal revenue, a certain allowance was made to the manufacturer of distilled spirits for soakage, and that the packages aforesaid had received the benefit of such allowance to the manufacturer of said spirits, and that said manufacturer had in all respects fully complied with the internal revenue laws of the United States, and all rules and regulations thereunder pertaining to the manufacturing tax upon the spirits

86 F.—58

aforesaid; that after emptying and using the contents of the 25 barrels first named, under and by a process in use by the plaintiff, it extracted from the wood of the barrels a portion of the soakage therein, amounting to 42.20 gallons of 15 per cent. proof; that the proof gallons thereof were 6.33, and the taxable gallons 6.3, if liable to tax; and that in like manner it extracted from the 15 barrels, after emptying and disposing of the contents thereof, as soakage 34.73 net wine gallons of 13 per cent. proof, making 4.51 proof gallons and 4.5 taxable gallons if the same were subject to tax; and that, on the spirits so produced, the defendant, as collector, exacted of the plaintiff the sum of $11.88, of which repayment had been duly demanded and refused.

Reference has been made to the following provisions of the Revised Statutes:

"Sec. 3247. Every person who produces distilled spirits * * * shall be regarded as a distiller.

"Sec. 3248. Distilled spirits, spirits, alcohol, and alcoholic spirit, within the true intent and meaning of this act, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses or sugar, including all dilutions and mixtures of this substance; and the tax shall attach to this substance as soon as it is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production, or by any subsequent process.

"Sec. 3249. Proof-spirit shall be held to be that alcoholic liquor which contains one-half its volume of alcohol of a specific gravity of seven thousand nine hundred thirty-nine ten-thousandths (.7939) at sixty-nine degrees Fahrenheit. And for the prevention and detection of frauds by distillers of spirits the commissioner of internal revenue may prescribe * * * rules and regulations to secure a uniform and correct system of inspection, weighing, marking and gauging of spirits."

"Sec. 3251. There shall be levied and collected on all distilled spirits on which the tax prescribed by law has not been paid a tax," etc.

"Sec. 3254. All products of distillation, by whatever name known which contain distilled spirits, or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits."

By section 48 of the act of congress approved August 27, 1894, the rate of tax on spirits was fixed at $1.10 per gallon.

As commonly defined, "distill" means "to drop; fall in drops; flow in a small stream; trickle." Cent. Dict. A "still" is "an apparatus for separating by means of heat volatile matters from substances containing them, and recondensing them into the liquid form. It consists essentially of two parts,—a vessel in which the substance to be distilled is heated, and one in which the vapor is cooled and condensed." Id.

John C. Black, for plaintiff in error.

John S. Stevens, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The intention of congress that all "distilled spirits, spirits, alcohol and alcoholic spirit," whether produced by fermentation or otherwise, should be subject to the tax prescribed, is evident; and it is not perceived that there is in the supposed lack of a specific regulation provided by the commissioner of internal revenue any obstacle to the full enforcement of that intention. What is subject to the tax is to be determined by the statute, and not by any rule which the commissioner is to adopt in order "to secure a uniform and correct system of inspection, weighing, marking, and gauging of spirits." "The true intent and meaning" of the act is to impose the prescribed tax on that substance known as "ethyl alcohol or spirit of wine." That the arti-

cle produced by the defendant in error was of that character is not disputed, but it is said that Corning & Co. was not a distiller or producer, within the meaning of the law; that,.when the spirits in the package have been gauged, the packages duly stamped and branded, and the tax paid, the government releases all claim upon it, and the purchaser who buys it has a right to use it as he pleases; that the soakage allowance is made because the spirits are deemed to be lost to the distiller, and are lost to him as he does not receive anything for the staves; that in law there is no restriction upon the use of a still by a rectifier, either to redistill his spirits, or to recover spirits from the charcoal used in his rectifiers; that there is no provision of law applicable to the case; that no fraud was attempted; and that no mistake was made. All this is a statement of the question, rather than a solution of it. The chief proposition is that there is no provision of the statute which authorizes the collection of this tax; but the statute is to be fairly and liberally construed, for the purpose of effecting its evident purpose, as manifested in the express declaration which it contains of its true intent and meaning (Smythe v. Fiske, 23 Wall. 374; U. S. v. Stowell, 133 U. S. 1, 10 Sup. Ct. 244); and it needs no strained construction to include the spirits in question. It is true that the allowance for soakage was made to the distiller on the theory that it was lost. As an article of spirits capable of use as such it was lost, and in its exact identity in all of its parts as it went into the staves it has never been reproduced. If it was proximately a "proof-spirit," as defined in section 3249 of the Revised Statutes, when it went into the staves, it consisted of alcohol and water in about equal parts; but the result of the process employed by Corning & Co. was a product which in bulk exceeded many times the quantity allowed for soakage. It is perhaps to be presumed that the absolute or pure alcohol contained in the product was in all its particles the same which had soaked into the staves of the barrels, but that is by no means certain, since methylic alcohol may be obtained by the destructive distillation of wood itself; and it is not impossible that in this instance, by the process employed, which was a form of distillation, alcohol was extracted which had not been absorbed from the distilled contents of the barrels. But, while it is evident that the spirits produced by Corning & Co. were not in their constituent elements the identical spirits which had been soaked into the staves of the packages, it is not to be understood that the decision of the court is placed on that ground. Concede the identity, and it remains true that while in the wood the absorbed liquor was not a merchantable article. As such, it had ceased to exist. Allowance was made for it on the theory that it never would exist in its original identity and form again, and it was, of course, the privilege of the purchaser to use the barrel or staves for any conceivable lawful purpose; but it was not his privilege to extract the soaked alcohol, alone or in combination with that contained originally in the wood, and make of it a merchantable spirit to be put untaxed on the market, to compete with that on which the lawful duty had been paid.

A rectifier by reason of the fractional quantity which is disregarded in gauging, it is asserted, can obtain untaxed one-half to 1 per cent. of

the spirits which he purchases, and why, it is asked, is he not as much entitled to the soakage as to this untaxed quantity? The distinction is clear. It is the difference between inclusion and exclusion. Except the soakage, no part of the spirits in a package is in fact untaxed. The fractional quantity which is disregarded in the computation of the amount to be charged on the package bears its proportionate share of the entire tax, and goes into the market without violation of either the letter or the spirit of the law. The soakage, on the other hand, besides not being included in the basis of computation, is not a part of the quantity upon which the tax is levied; and, consequently, when extracted from the empty barrels in the manner stated, it is spirits on which the lawful tax has not been paid, and is subject to taxation no less than if produced, by the same or any other process, from imported barrels or staves, or from any other source or in any other mode which might be suggested. It is not inconceivable, nor necessarily improbable, that a process might be invented whereby the alcohol in fermented liquors, on which the tax is only a dollar for a barrel of 31 gallons, could be withdrawn, in whole or perhaps in such part as to leave the minimum quantity essential to the integrity of the liquor from which it should be taken, and, if the spirits produced from the staves of whisky barrels is not taxable because the free contents of the barrels had been taxed, still more ought the spirits to be exempt which, as constituent parts of beer or ale, had borne the tax imposed on those liquors. Again, under the regulations of the internal revenue department, whiskies, spirits, or high wines which have been held in bond are regauged when about to be put on the market, and allowance made for actual evaporation during the period of storage; and let it be supposed that means should be discovered by the use of which in the warehouses the evaporated spirits, after escape from the barrels, could be recondensed and saved: Would it be necessary to amend the law or to add to the rules of the department of internal revenue in order to bring under taxation the spirits so produced or recovered?

Little credit is due to the lawmaker who is driven to special enactments to supply the defects of a general law on a subject to which general provisions are applicable; and when a comprehensive statute has been so framed that, without distortion of its terms, it may be reasonably applied to extraordinary and unexpected conditions, it is no duty of the courts to impose upon it a narrow construction, which will include only anticipated transactions and conduct, leaving evasive schemes and devices, which, though unforeseen, are clearly within the aim of the law, to the awkward and inefficient remedies of special legislation.

The judgment below is reversed, with direction to enter judgment for the defendant.

JENKINS, Circuit Judge, dissents.