WESTERN EXTRACTING CO. v. SMIETANKA, Internal Revenue Collector.

(Circuit Court of Appeals, Seventh Circuit.   April 18, 1916.   Rehearing Denied May 25, 1916.)

No. 2272.

1. INTERNAL REVENUE ⊚═28—TAX—INJUNCTION—BILL—SUFFICIENCY.
   Allegations that nontax-paid liquor absorbed by whisky barrels in bonded warehouse evaporated, and was replaced in six months after leaving the warehouse by tax-paid liquor, with which they were refilled, and that complainant extracted liquor only from refilled barrels, which had been out of the warehouse an average of six months. was insufficient to show that all the extracted liquor was tax-exempt, for the tax liability on barrels under the six-months average was not canceled because other barrels were out over six months before being treated.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 76–81; Dec. Dig. ⊚═28.]

2. INTERNAL REVENUE ⊚═28—INJUNCTION—BILL—SUFFICIENCY.
   An allegation that a barrel is "single-stamped," indicating refilling since leaving the warehouse, does not establish that it has been out longer than "double-stamped" barrels containing the original warehouse liquor, where it is also alleged that retailers receive and empty both kinds of barrels indiscriminately.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 76–81; Dec. Dig. ⊚═28.]

3. INTERNAL REVENUE ⊚═28—INJUNCTION—BILL—SUFFICIENCY.
   Where a bill alleges that handling, transportation, and temperature variations accelerate the evaporation and absorption in whisky barrel staves, and experience suggests other influential factors, it may be concluded that the time required for the process varies with conditions.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 76–81; Dec. Dig. ⊚═28.]

4. EQUITY ⊚═144—PLEADING—BILLS—REPUGNANCY BETWEEN CONCLUSIONS AND FACTS.
   Complainant's statement of conclusion that it treated only "single-stamped" barrels is not supported by its allegations of fact that those supplying it with barrels have both single and double stamped barrels, and that all distinguishing marks have been obliterated before complainant secures them.

   [Ed. Note.—For other cases, see Equity, Cent. Dig. § 338; Dec. Dig. ⊚═144.]

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INTERNAL REVENUE ⚷⊸12—TAXES—LIABILITY OF MIXTURE TO TAX.

Where it is impossible to ascertain the proportions of tax-paid and nontax-paid liquor in whisky barrel staves, one who extracts and markets the mixture is taxable upon the entire amount.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 30–32; Dec. Dig. ⚷⊸12.]

6. INTERNAL REVENUE ⚷⊸12—ENFORCEMENT OF TAX—REGULATIONS—REASONABLENESS.

There is nothing unreasonable in the purpose of internal revenue orders requiring proof of certain facts to determine whether liquor extracted from empty whisky barrels was tax-paid.

[Ed. Note.—For other cases. see Internal Revenue. Cent. Dig. §§ 30–32; Dec. Dig. ⚷⊸12.]

7. INTERNAL REVENUE ⚷⊸28—ENFORCEMENT OF TAX—REGULATION—WHO MAY QUESTION.

Where complainant does not itself know. and cannot prove, what proportion of the liquor it extracts from empty whisky barrels is tax-paid, it has no interest in the method of proof required before the extract is stamped tax-paid.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 76–81; Dec. Dig. ⚷⊸28.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by the Western Extracting Company against Julius F. Smietanka, Collector of Internal Revenue at Chicago, Ill., and others. From a decree dismissing the bill on motion of the named defendant, complainant appeals. Affirmed.

Appellant brought a suit in equity against the Secretary of the Treasury, the Commissioner of Internal Revenue, and the Collector of Internal Revenue at Chicago to enjoin the enforcement of certain orders of the Bureau of Internal Revenue of May 18, 1910. The Collector alone appeared, and moved to dismiss the bill for want of equity appearing on its face. The court decreed dismissal accordingly, and from such decree this appeal is prosecuted.

The bill charges: That since 1894, and up to July 1, 1910, when the orders complained of went into effect, appellant was in the business of buying from retail liquor dealers and others, whisky barrels which they had emptied, shipping them to its plant at Chicago, where they were treated by some process whereby the spirits which had been absorbed into and were held in the pores of the wood of the barrels (commonly called "soakage") was recovered therefrom, converted into commercial grain alcohol, and sold without payment by appellant of the statutory tax of $1.10 per gallon on distilled spirits. That for doing such business the Bureau of Internal Revenue issued yearly to appellant a rectifier's license for the recovery, and a wholesale liquor dealer's license for the sale of the product. The bill charges that appellant thus treated, and proposes in the future to treat, only barrels known as "single-stamp" barrels, which had theretofore been "double-stamp" barrels, the distinction between which will appear from the provisions of the revenue law relating to tax on distilled spirits, and the significance thereof from the further statement of the facts.

Section 3247, Rev. Stat. U. S. (Comp. St. 1913, § 5981), defines a distiller, and section 3248 (section 5982) defines distilled spirits. Section 3251 (section 5985) provides for a tax of $1.10 per gallon to be paid the government on distilled spirits. Elaborate and detailed provisions are made for governmental supervision of distilleries and the storage and handling of the product, to insure the payment of the tax. Section 3271 (section 6009) makes provision for bonded warehouses wherein the product of distilleries must be stored under control of the Collector. Section 3287 (section 6028) provides that on receiving the barrel in the warehouse it shall be gauged and a stamp affixed

⚷⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

thereon showing the quantity, date of receipt, name of distiller, and serial number of cask, and that on the cask shall be cut the name and quantity of the contents. It is provided (3251) that the spirits may be kept in the warehouse not exceeding eight years, and that the tax must be paid on the quantity in the barrel shown on regauging at the time of removal from warehouse, and sections 3294 and 3295 (sections 6036, 6037) make provision for regauging for withdrawal, and payment of the tax, and then affixing another stamp on the barrel showing the quantity then contained in it on which the tax has been paid, name of person paying the tax, and person to whom and place where it is to be delivered on withdrawal. The barrel must then be taken from the warehouse (section 3288 [section 6029]). At the time it is taken from the distiller's warehouse the barrel has on it the two stamps described, and is then what the bill terms a "double-stamp" barrel. The bill charges that the double-stamp barrel on leaving the warehouse would go to one of the three classes provided by law—the rectifier, who combines, mixes, or otherwise changes the product, the wholesale liquor dealer, who disposes of it in quantities of more than five gallons, and the retail liquor dealer, who sells it in quantities less than five gallons.

Section 3318 (section 6100) provides that, before a rectifier or wholesaler draws off or adds to or alters any part of the contents of the barrel, he must enter in a book of the form provided by the Bureau the information afforded by the stamps, marks, and brands then on the barrel, and must return monthly to the Collector a transcript of such entries. On emptying the barrel he must, under heavy penalty, efface and obliterate all the marks, brands and stamps then on the barrel. Section 3324 (section 6105). Sections 3320, 3322, and 3323 (sections 6102–6104) provide for gauging barrels filled by rectifiers, and for affixing stamps to barrels sent out by them or by wholesalers which contain spirits theretofore received from the distiller's warehouse. After the barrel thus received from the distiller is emptied, and all stamps and brands thereon effaced and obliterated, the barrel may again be used by the rectifier or wholesaler for containing distilled spirits, the same as an entirely new barrel; but when so used, like any other barrel so filled by the rectifier or wholesaler, it must have a stamp affixed thereon to indicate that the spirits contained therein have been tax-paid. When such a barrel is so stamped the bill denominates it a "single-stamp" barrel. When the retail liquor dealer or other person gets the barrel from the rectifier or wholesaler, he must on emptying the barrel likewise efface and obliterate all marks, brands, and stamps thereon, and the bill states it is thereafter that the empty barrels are purchased by appellant.

The bill states that appellant will buy only single-stamp barrels which had theretofore been double-stamped, that an average of six months elapses after such barrels leave the distiller's warehouse before they reach appellant for treatment, and that in less than six months the soakage contained in the pores of the wood when the barrel leaves the warehouse will have evaporated from the outside of the barrel, and have been wholly replaced by soakage from the tax-paid contents afterwards put in it by the rectifier or wholesaler, and that therefore the soakage which appellant proposes to recover, has in fact paid the tax.

It is stated that in 1898 Commissioner of Internal Revenue Scott issued an order in the form of a letter wherein it was provided that persons proposing to recover soakage from such barrels must have a rectifier's license and must make application to the Collector on prescribed forms that they propose to recover the soakage from a given number of barrels, and expect to recover a given quantity of spirits therefrom; that thereupon a gauger was to be sent to inspect the barrels, and such as he considered proper for treatment might be treated accordingly, and when the contents were recovered they were to be barreled, gauged, stamped and marketed without payment of any tax, and that ever since appellant was in this business up to July 1, 1910, such was the practice; that on May 18, 1910, Commissioner Cabell issued orders discontinuing this practice, and providing that after July 1, 1910, no one may extract soakage from empty spirit barrels unless he first supply to the Collector affirmative proof as to each barrel that all the spirits contained in its staves have been properly tax-paid, and requiring also that rectifiers, such as appellant, must thereafter make the same returns as ordinary rectifiers are re-

quired to make as to the history of the spirits rectified as shown by the stamps and brands on the barrel.

The bill charges that, owing to the required effacement of all the marks and brands on the barrel, it is impossible to make this return, or to supply the requested information as to each barrel; that appellant's business was built up under the prior practice, and that in reliance upon its continuance appellant has invested in its said business $100.000, and others in like business an amount approximating $1,000,000, and that, if such orders of May 18th are upheld, the business cannot be carried on, and the investment therein will be practically lost; and that in fact since July 1, 1910, when the orders went into effect, appellant's business has been wholly suspended. It is claimed in the bill that the long uniform practice of the Bureau in dealing with this business is such a construction or recognition by the government as will entitle appellant to remedy by injunction to prevent the enforcement of the orders of May 18th.

D. S. Wegg, of Chicago, Ill., for appellant.

Charles F. Clyne and Joseph B. Fleming, both of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). That soakage recovered from the staves of empty whisky barrels must before entering into commerce bear the government tax on spirits of $1.10 per gallon was decided by this court in Hunter v. Corning & Co., 86 Fed. 913, 30 C. C. A. 483. There Corning received from the distiller's bonded warehouse for rectification the barrels of whisky, emptied them, and recovered the soakage from the barrels. It was assumed that the spirits there recovered were a part of such as had entered into the pores of the barrel staves while in the bonded warehouse, and that therefore no tax had in fact been paid on such soakage, since under the law the tax actually paid was on the free, pourable contents of the barrel as gauged at time of removal from the warehouse. As to this it is frankly stated in the brief for appellant:

"We admit in this bill that, at the time a double-stamped barrel leaves a distiller's bonded warehouse, the liquid then contained in the pores of the wood of such barrel is the original distilled spirits, and that the general tax of $1.10 per gallon has not been paid thereon by the distiller. We further admit that under Hunter v. Corning, 86 Fed. 913, 30 C. C. A. 483. it is the law of this circuit, while such decision stands, that if such double-stamped barrel be practically treated at once by the extractor, he should pay the general tax upon the spirits which he obtains from the pores of the wood of such double-stamped barrel."

The relief sought by the bill herein is bottomed on the foundational allegation that the soakage proposed to be extracted by appellant is in fact tax-paid, and should not, on being recovered for commerce, again be taxed.

[1] The allegations of fact, from which the conclusion of tax payment is claimed to follow, are that appellant, in its sole business of recovering the soakage from the barrels, buys of retail liquor dealers and others only single-stamp barrels (as above defined), and that such single-stamp barrels, when coming to appellant for treatment, have been out of the warehouse an average of six months or more, and that during such six months all the nontax-paid spirits in the staves at time

of withdrawal from the warehouse will have evaporated from the outside of the barrel, and have been wholly replaced by absorption from the tax-paid contents of the barrel.

Conceding the process of evaporation and absorption to be as stated in the bill, the conclusion that the tax has been paid on the soakage in the barrels when they come to appellant, under the bill, depends in large measure on the time the barrels have been away from the warehouse. As to this all the bill charges is that "the average time for such period is not less than six months," and in appellant's brief it is stated "an average of six months' time elapses as to every double-stamped barrel which has been changed into a single-stamped barrel from the date it leaves the distiller's warehouse and is purchased by us."

But what has the average to do with the case? The fact that six months is the average would imply that in some cases the time is longer, and in others shorter, than six months. Indeed, for anything that appears in the bill to the contrary, barrels may leave the distiller's warehouse, come into the hands of the wholesaler or rectifier, be emptied, replaced by tax-paid liquor and single-stamped, and the barrel finally be emptied and sold to appellant, all within a period of a very few weeks, or even days, and in such case the tax on the soakage would clearly be unpaid.

Suppose a consignment of just such barrels were treated by appellant, and 1,000 gallons of nontax-paid spirits recovered from them. Should this under any circumstances be permitted to enter commerce without paying the tax? Then suppose another such consignment comes for treatment, where the intervening time is a year, and a like amount recovered which may be considered tax-paid because of the evaporation and loss of all the original nontax-paid soakage and replacement by the tax-paid contents. It is true that as to the two lots the average of time intervening between their leaving the warehouse and reaching appellant would be six months; but how would this affect the right of the government to have its tax on the first lot? The loss to the owner through absorption of the tax-paid liquor, does not give rise to any claim for a refund of the tax which has been paid on what has been so lost, whereby it might with show of reason be claimed that the tax due the government on the first lot might be balanced against the counterclaim arising on the second. Under such circumstances the very most that could be claimed is that the first lot, not having paid the tax, should pay it, and the second, having once paid the tax, ought not again to be required to pay. So if the soakage in one lot or barrel is tax-paid, this fact would not in any way relieve from the liability to pay the tax on the soakage from any lot or barrel on which the tax has not been paid.

[2] Furthermore, from the allegations of the bill, the fact that a barrel is single-stamped does not of necessity require the conclusion that it has been materially longer out of the warehouse than the double-stamp barrel. The bill states that the barrel becomes single-stamped when the distiller's double-stamp package is emptied by the wholesaler or rectifier, refilled with tax-paid spirits, and stamped as tax-paid—the two stamps theretofore thereon being effaced. But it states

also that distiller's double-stamp packages are also sold directly to the retail dealer, and to others, who may finally empty them, and who may have on hand, and may empty indiscriminately, double and single stamped barrels, without rule or probability as to which was first emptied. So the allegation that appellant uses only single-stamp barrels does not, under the facts charged in the bill, necessarily distinguish, as between single and double stamp barrels, which was longest out of the bonded warehouse.

[3] But the bill states yet other elements than that of time as bearing on the rapidity of evaporation, in the words following:

"That such single-stamped barrels are held by such rectifiers and the said wholesale liquor dealers until sold, and such barrels are carried or transported by steam cars, wagons, trucks, or other vehicles, and sometimes by all of them, to divers points and distances, and they are handled and rehandled divers times, and become exposed to varying degrees of temperature, each and all of which largely increase and accelerate the aforesaid process of evaporation and absorption, before any of such barrels become empty in the hands of the qualified retail liquor dealers or other persons, who have poured out, used, or consumed the contents thereof."

Ordinary experience would suggest yet other materially influential conditions, such as the kind and quality of the material of the barrel, as bearing on the porousness of the wood, and the nature of the place where the barrels are kept after removal from the warehouse—whether in a closed, dark, damp place, which would retard, or in a place open, light, and airy, which would facilitate, evaporation. And so from the bill itself it may be concluded that under some conditions the evaporation may be considerable in a short time, and under others may be slight during a much longer period.

[4] While the bill alleges that appellant treats or proposes to treat single-stamp barrels only, and that single-stamp can be readily distinguished from double-stamp barrels, such statements of conclusions are dependent on the allegations of fact upon which they are predicated. In the bill it is stated:

"That it is impossible to ascertain or state the exact period of time which elapses as to each barrel from the date of its removal from the distillery bonded warehouse to the date your orator removes from the pores of the wood thereof the liquid contained therein."

The reason for such impossibility is well stated in appellant's brief as follows:

"It is true that, as all marks, brands, and stamps have been effaced from each barrel we buy before its purchase by us, as provided by section 3324, Rev. St. [Comp. St. 1913, § 6105], it is impossible for us to trace each barrel and show the exact length of time which has elapsed since it left the distiller's hands."

There is nothing distinctive about the barrels themselves, as between single and double stamp barrels. Both kinds come into the hands of those who sell to appellant. If the stamps and brands remained thereon, the information would be readily available to determine, not only when and from what distillery the barrels were taken, but also whether the barrels were single or double stamped, though in such case the now single stamp would probably be denominated triple stamp. But

the obliteration of all stamps and brands makes all barrels then look alike, and the same conditions which make it impossible to know when the barrels left the warehouse make it alike impossible for appellant to know which of the empty barrels were single and which double stamped; and it is not apparent from the bill how a gauger, who inspects the barrels when they come into appellant's possession to determine whether they may be treated tax-free, can know any more about it than appellant.

But appellant urges that, as a necessary result of the continuous process of evaporation and absorption after the barrels leave the warehouse, to use the language of its brief:

"There is no way of ascertaining from time to time by the day, week, or month just how much, if any, of the distilled spirits which formed the original soakage remain in the pores of the wood of each barrel. Hence it is very clear that the tax which should be paid by the extractor, if any, must vary from time to time, or constantly shift as the length of time increases from the date the barrel leaves the warehouse, and also as such evaporation may be enhanced by modifications in heat, changes in position, through handlings by different persons, transportation, and the like. Certainly a question would arise in each barrel as to what quantity of the original spirits which had not paid the tax remained in the pores of the wood thereof."

This admitted uncertainty as to each barrel is necessarily reflected in any accumulation of barrels, and surely does not warrant the alleged conclusion that the soakage in any number of barrels is tax-paid.

[5] What is the rule governing such a condition of uncertainty? In appellant's brief it is stated to be:

"Any doubt as to such quantity must be solved, under the authorities, in favor of the extractor. There is no way in which such quantity could be ascertained, and any attempt to collect a tax thereon would be void."

We find no authorities which support such a doctrine. If under the statute it were doubtful whether or not spirits or any other article should be taxed at all, such doubt would inure to the benefit of the one sought to be taxed. But there is no doubt of the statute requiring all spirits included in its provisions to pay the tax. The question here is not one of statutory construction, but of proof whether or not the tax has been paid; and we are of the opinion that one asking the government to stamp, as tax-paid, spirits to be marketed in competition with tax-paid goods, must present to the authorities affirmative proof that the tax has been paid; and such requirement is not satisfied by showing a state of facts under which it is unknown or unknowable whether all or any part is paid.

If, when the barrels leave the warehouse carrying in the staves spirits on which no tax has been paid, and are so handled that at a given time thereafter it cannot be known how much, if any, of the soakage in the staves has paid the tax, the owner is very much in the situation of one who willfully and indistinguishably mixes and confuses his own goods with those of another. The mixer must bear any resultant loss—often to the extent of losing his own goods. If, as applied to circumstances like those here presented, the rule were otherwise, one who would mix some tax-paid alcohol with a quantity on which no tax has been paid would be entitled to have the whole mass

treated as tax-paid, unless the government could affirmatively show the exact proportions of each.

It is our view that, when tax-paid spirits are mixed or suffered to be mixed with nontax-paid spirits, so that the proportion of each cannot be ascertained, one undertaking to market the mixture must pay tax on the whole. In an early case it was held:

"That the payment of the tax on all the spirits not having been proven, there being a mixture of fraudulent spirits with spirits that had paid the tax, the whole lot was legally forfeited to the use of the government." United States v. Fifty-Four Barrels of Distilled Spirits, 25 Fed. Cas. 1074.

[6, 7] The bill alleges that on the faith of the Scott letter and others, and the long practice thereunder of permitting such soakage to be recovered and marketed without requiring payment of any further tax thereon, there has been a long acquiesced in practical construction of the statutes and rules governing such a situation by those charged with supervision over and collection of the internal revenue, and that it would now be highly inequitable to permit this practice to be changed as against appellant, which has, in reliance thereon, invested $100,000 in its plant which would become practically valueless. Many cases are cited in appellant's brief to the general effect that, where a statute is of doubtful meaning, long and uniform construction and practice thereunder by the department or officers of the government charged with its enforcement is entitled to great weight, and will ordinarily be accepted and followed by the courts. But is there such a question or principle here involved?

The statute plainly prescribes the records to be kept and returns to be made by rectifiers in order to afford proof to the officers charged with carrying out the law that the rectifier handles only tax-paid spirits. In the practice relied upon, the statute was departed from in dealing with appellant, notwithstanding he operated under a rectifier's license. In its case proof other than that indicated by the statute was accepted as evidence that the spirits it dealt with were tax-paid. Assuming that the plain provisions of the statute might be departed from in favor of one holding a rectifier's license, who is handling spirits on which the tax has unquestionably and provably been paid, but who cannot make proof in the particular form and manner which the statute prescribes for ordinary rectifiers, yet the question here presented is not one of statutory construction or interpretation, but of proof as to whether or not the tax has in fact been paid on the soakage which appellant would recover. If appellant cannot comply with the statute, it surely can have no vested right or interest in the kind, degree, or character of proof that may properly be required to establish the fact of payment before the government shall stamp the recovered product as tax-paid. If experience has convinced the Bureau that under the long-existing practice sufficient proof was not afforded that the tax had been paid on spirits which appellant would market as tax-paid, no reason is apparent why it may not amend and change the practice, so that the government may be amply secured in its revenues. That such was the experience claimed by the Commissioner to be the reason for the change in the practice abundantly appears from one of the

orders of May 18, and a letter of the Commissioner of March 31, 1910, referred to in the bill. · A different question might be presented if it were now undertaken to unsettle and impeach completed transactions under the old practice. But the orders complained of have reference only to the future.

It is urged that the May 18th orders are unreasonable, because their enforcement would in effect prevent appellant from carrying on its business, since, owing to the required effacement of all stamps, marks, and brands on the empty barrels before appellant buys them, it cannot supply the information demanded. But according to the bill the presence or nonpresence in the staves of nontax-paid alcohol depends mainly on the time which has elapsed between withdrawal from the warehouse and treatment by appellant. The orders require proof of the facts from which this may be determined. Surely there is nothing unreasonable or improper as to the purpose of the orders; and if the prescribed method cannot be complied with, the bill suggests none other, except the untenable assumption of "average of time." The effect of the orders on appellant's business is not an exclusive test of their reasonableness. In a letter, referred to in the bill, of July 28, 1905, of Commissioner Yerkes, it is said:

"It is, of course, evident that all spirits in the staves of a new single-stamped barrel which has been filled with tax-paid spirits must consist of spirits on which the tax has been paid; and consequently no further tax can be collected on such spirits when recovered from the staves."

If it were proposed to treat such new barrels which could clearly and certainly be proved to be such, a different question might arise. But here the bill expressly disclaims that appellant treats new barrels into which the rectifier or wholesaler has put tax-paid spirits, but, on the contrary, alleges that the barrels it proposes to treat are those which, before being refilled by the rectifier or wholesaler, and sent out as single-stamp barrels, were in the bonded warehouse, on leaving which the soakage contained in the staves was not tax-paid. And since from the bill itself it is apparent that appellant does not and cannot know, and therefore cannot prove, whether the soakage in such barrels at the time of extraction is tax-paid, it is quite immaterial to appellant what rule on·the subject the Bureau may promulgate. So far as appellant is concerned it could not in any event, under the facts of the bill, affirmatively show that the soakage it proposes to extract and market is tax-paid, and it is therefore not affected by the precise form, kind, or degree of proof which the government may require to show that the tax is paid. Even if the orders might be said to be unreasonable as to barrels which never held nontax-paid spirits, that is clearly not the case as to barrels within the purview of the bill.

Holding as we do that the government has in any event the right to require satisfactory proof that the tax on the soakage in any and all barrels has been paid before same may be extracted, stamped, and marketed as tax-paid, and finding from the bill that appellant in its business as described does not and cannot and will not know whether or not the tax has been paid on the soakage it proposes to extract, we conclude that the bill was properly dismissed for want of equity, and the decree of the District Court is accordingly affirmed.