## UNITED STATES v. ONE 1939 CHEVROLET COACH AUTOMOBILE, MOTOR NO. 1925763.

### No. 131.

District Court, W. D. Kentucky, at Louisville.

June 28, 1940.

Eli H. Brown, III, Dist. Atty. and J. D. Inman, Asst. Dist. Atty., both of Louisville, Ky., for United States.

Frank E. Daugherty and Garland R. Hubbard, both of Louisville, Ky., for intervenor Durrett.

MILLER District Judge.

The United States of America instituted this libel to forfeit a Chevrolet coach automobile owned by Jack Durrett by reason of the fact that Durrett was apprehended by Government agents on December 7, 1939 while using said automobile which contained two one gallon glass jugs filled with whiskey with respect to which it was alleged that the Internal Revenue tax had not been paid.

Durrett admitted that the two gallons of whiskey were concealed in the car at the time of his arrest, but claimed that it was not moonshine whiskey, but on the contrary was whiskey drained from whiskey barrels and on which the Revenue tax had previously been paid by the distillery. His contention was that after the distillery had emptied the barrels they had been sold to one Cecil Brown, who resold some of them to one Robert Hartfield, and that Durrett had, after allowing the barrels to set for awhile, succeeded in draining a small amount from each barrel which constituted the two gallons found in his possession. He claimed that inasmuch as the distillery had paid the Internal Revenue tax when the whiskey was released from storage the amount which he subsequently drained from the barrels was in legal effect tax-paid whiskey.

■ The evidence introduced at the trial was substantially as follows:

The General Manager of the distillery company testified that he sold several truck loads of empty whiskey barrels to Cecil Brown in October 1939 after having paid the Internal Revenue tax on the whiskey in the barrels. Cecil Brown testified that he resold about 32 of the barrels to Robert Hartfield in the fall of 1939. Hartfield testified that Durrett was to have half of the barrels so purchased but that he only took two or three of them from Hartfield's garage to his own home, and later brought them back. Hartfield also testified that he did not see Durrett drain any of the barrels while they were at Hartfield's garage. On the other hand, Mrs. Hartfield testified that on the morning of November 7, 1939, the day of Durrett's arrest, she saw Durrett drain two or three barrels on the back of the lot on which the garage was situated. Durrett testified that it took him from two to three hours to drain a barrel and that he was able to secure a pint or more out of each barrel. The evidence further showed that the distillery company before selling the barrels thoroughly rinsed each barrel after it had been dumped and drained with a gallon and one-half of distilled water, and that this rinsing water was hardly colorable after being so used. Brown also testified that he drained some of the barrels before selling them to Hartfield, but was only able to obtain from each barrel enough for one or two drinks. He also testified that if a barrel was permitted to remain in the sun some of the whiskey which

had soaked into the staves of the barrel would be withdrawn from the staves by the sun rays, which enabled him to obtain from the barrels in question the small amount of whiskey he had obtained. Evidence was also introduced showing that Durrett shortly after his arrest asked the witness "Who turned him up." In the opinion of the Court Durrett's contention that he obtained the two gallons of whiskey in question by draining some of the barrels referred to is not sustained by the evidence. The length of time elapsing between the time when the barrels were originally drained by the distillery company and November 7, 1939, the way in which they were rinsed by the distillery company before being sold, the small number of barrels that Durrett took to his own home, the two or three barrels that he drained on the Hartfield lot, the two or three hours required to drain a barrel the way in which Durrett claims to have handled the barrels on the Hartfield lot, and the small amount which it was possible to obtain from each barrel without subjecting the barrels to a steaming process, which Durrett does not claim to have done in this case, all make it improbable that Durrett could have obtained two gallons of whiskey from the barrels in question on the morning of November 7, 1939.

■ Even if the evidence could be considered as sustaining Durrett's contention that he obtained the whiskey in question by draining it from the barrels which were purchased from the distillery, it does not follow as a matter of law that the whiskey so obtained was tax-paid whiskey. The whiskey so obtained would necessarily be whiskey extracted from the barrel staves by reason of the action of the sun and the atmospheric elements. In computing the tax on whiskey in barrels the Government allows both a soakage allowance and an evaporation allowance with the tax being imposed on the net contents. Accordingly, the amount of whiskey which is absorbed by the barrel staves while the whiskey is in storage is not included in the pourable contents of the barrel on which the tax is levied. When this whiskey is later extracted from the barrel staves by action of the atmospheric elements or by steaming, as is sometimes done, the whiskey thus obtained is not tax-paid whiskey. This question seems to have been previously decided by the following two decisions: Hunter v. E. S. Corning & Co., 7 Cir., 86

F. 913, and Western Extracting Company v. Smietanka, 7 Cir., 234 F. 229. Counsel for the intervenor Durrett have cited no authority to the contrary. Accordingly, as a matter of law the intervenor's position is not sustained even though his contention as to the facts might be correct.

Judgment will be entered sustaining the libel and dismissing the intervening petition. Counsel will submit findings of fact and conclusions of law in accordance with the views expressed in this opinion.